IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ASARCO LLC, a Delaware corporation;<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br>a Utah corporation;<br><br>　　　　　Defendant. | 8:12CV416<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Filing No. 51. Plaintiff Asarco filed this action seeking contribution against Union Pacific Railroad Company pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq*. ("CERCLA"), for environmental liability related to the Omaha Lead Superfund Site in Omaha, Nebraska.

## BACKGROUND

The Omaha Lead Site is a 27 square mile residential area in Omaha, Nebraska, where many of the properties are contaminated with lead. At one point Asarco and Union Pacific jointly operated and managed a metals refinery and smelter near Omaha, Nebraska. Both parties owned the site at different times between 1871 and 1997. Union Pacific originally owned the property upon which the Asarco facility was based. Union Pacific leased the property to Asarco until 1946 at which time it sold the property to Asarco. The Environmental Protection Agency ("EPA") contended that most of the lead contamination came from the Asarco lead smelter and refinery in Omaha. These polluted areas became known as the Omaha Lead Site ("OLS"). It was designated as a

Superfund site in 2003, with both Asarco and Union Pacific named as potentially responsible parties ("PRPs"), with a clean-up cost of around $400 million.

Prior to any settlement, Asarco filed a Freedom of Information Act action ("FOIA") against the EAP, alleging fraud and destruction of property. No documents were disclosed to Asarco. Thereafter, Asarco went into bankruptcy. Asarco says it discovered that Union Pacific filed its own FOIA action and asked to join Union Pacific in obtaining relevant documents.

Union Pacific believed that it was responsible for only the industrial lead and not any residential lead. As a result, it began obtaining EPA documents. Union Pacific believed the EPA was destroying such documents and sought an injunction regarding the same. The court entered a temporary restraining order against the EPA.[1]

Asarco also argues that it told Union Pacific it might file a contribution action against Union Pacific. Union Pacific and Asarco then negotiated an agreement called the Tolling Agreement which stated that the parties agree "to defer resolution of the Contribution Claim[] until after the conclusion of the FOIA litigation" and to not "in any way alter[] the claims . . . [or] defenses . . . available to any Party, except as provided [in the Agreement]." Tolling Agreement ¶ 7; ¶ 4, Filing No. 1 -2. This agreement was drafted to extend the statute of limitations for two years on the contribution claim.

In 2005 Asarco filed Chapter 11 bankruptcy in the Southern District of Texas. In March 2009 Asarco and the government filed a proposed settlement in the amount of $187.5 million. The bankruptcy court thereafter approved the settlement. The Plan

---

[1] Complaint in Union Pac. R.R. Co. v. United States EPA, No. 8:10-CV-00235-LSC, Filing No. 1 (D. Neb. June 23, 2010); Nebraska FOIA case, Filing No. 16 (D. Neb. June 24, 2010). The FOIA case was referred to mediation by order on October 7, 2010. Asarco knew of this order eleven days before it entered into the Tolling Agreement.

2

Administrator later moved to reopen and reduce the settlement amount. Asarco and the United States have now reached an agreement of $15 million and are awaiting court approval.

Asarco originally filed the current case against Union Pacific in Arizona District Court. Filing No. 1. Union Pacific then moved to transfer or dismiss the case. The Arizona District Court held a hearing and thereafter transferred the case to the District of Nebraska pursuant to 28 U.S.C. § 1406(a). Filing No. 27 and Filing No. 28. The district court judge in Arizona stated: "The court further finds that venue in the Arizona District Court is improper because the Nebraska District Court has retained continuing jurisdiction over the Consent Decree. . . ." and "[I]t is clear that the Nebraska District Court has retained continuing jurisdiction over the Consent Decree and all matters related to it.". Filing No. 27, at 5 and 6.

The clerk of court pursuant to a random draw assigned the case to this court. Thereafter, Union Pacific filed a notice of related case and asked that the case be transferred to Judge Smith Camp. Filing Nos. 42 and 43. Asarco filed a response arguing that this was not a related case, because the claims are outside of the consent decree. Filing No. 44. Judge Smith Camp denied the motion to reassign the case. Filing No. 57.

Asarco moved to intervene in the Nebraska FOIA case, arguing that it had an interest in the cost reimbursement, that it was potentially adverse to Union Pacific, and that a resolution against the EPA, absent Asarco, could affect the rights of Asarco. The EPA objected to Asarco's participation in the Nebraska FOIA case and the mediation, stating that mediation was an attempt to achieve "a global resolution of any potential

3

OLS contamination liability, state and federal, facing Union Pacific." Ex. 11, Nebraska FOIA case, Filing No. 52, at 2 (D. Neb. Nov. 5, 2010). The EPA also told Asarco that it could protest the findings and the "public comment period would be an appropriate venue for Asarco LLC to challenge a settlement agreement between Union Pacific and the EPA on CERCLA claims." *Id.* at 4. Union Pacific and the EPA advised the court in the Nebraska FOIA case of an agreement on November 12, 2010. The parties also served notice of the agreement on counsel for Asarco.

Union Pacific and the government settled their case in May 2011. Filing No. 53, Ex. 2. The government then filed a separate CERCLA action asking the court to approve the settlement by entering a proposed consent decree. The consent decree was published in the Federal Register and counsel for Asarco notified of the settlement. Asarco had the right to intervene in the Nebraska CERCLA case, object to the consent decree, and appeal its approval. *See United States v. Union Elec. Co.*, 64 F.3d 1152, 1155 (8th Cir. 1995) (non-settling PRPs permitted to intervene as a matter of right to preserve contribution rights so as to challenge consent decree). Asarco also had the right to submit comments to the EPA and to file objections in the consent decree lawsuit. Asarco did nothing. On August 9, 2011, the court entered a final judgment approving the consent decree, including contribution protection for those matters "addressed" in the settlement. Union Pacific paid $25 million in clean-up costs, although it did not admit to any liability. Union Pacific argues that the consent decree as approved by the court protects it from contribution claims under CERCLA, Section 113(f)(2), 42 U.S.C. § 9613(f)(2).

**STANDARD OF REVIEW**

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* ( quoting *Celotex*, 477 U.S. at 324). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Id.* at 251-52 (noting the inquiry is whether the evidence presents a sufficient disagreement to require

5

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

## DISCUSSION

The court agrees with Union Pacific that this is either a CERCLA response contribution action or it is a breach of contract case. The court concludes it is clearly a contribution case.

### A. Consent Decree

Section 113(f)(2) states:

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement.

42 U.S.C. § 9613(f)(2). The language of the settlement agreement indicates that the "matters addressed" in the consent decree include the scope of Union Pacific's contribution liability (Filing No. 53. ¶¶ 81, 92) along with protection from any contribution "actions or claims" related to "all response actions taken or to be taken and all response costs incurred or to be incurred . . . at or in connection with the [OLS], by the United

6

States or any other person." *Id.* ¶ 81. The language protects Union Pacific "for claims for contribution regarding matters addressed in the settlement." CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2).

Union Pacific argues that the Consent Decree approved by Judge Laurie Smith Camp completely resolves all of Union Pacific's liability at the Omaha Lead Superfund site in Omaha, as to all parties, including the federal government, the State of Nebraska, and all private parties. Union Pacific argues that the lawsuit filed in Arizona by Asarco and transferred to Nebraska is an attempt to unravel the Consent Decree and hold Union Pacific responsible for contribution.

Union Pacific also contends that federal law subordinates all rights of potentially responsible parties to the government. The Eighth Circuit acknowledges that contribution claims against those who settle "are also subordinate to the rights of the United States or a State. . . " and "A person seeking contribution under § 113(f) may be subject to the equitable allocation of response costs, see § 113(f)(1), and may not recover from previously settling parties, see § 113(f)(2)." *Morrison Enterprises., LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011). Other courts have specifically noted that Section 113(f)(2) extinguishes such claims under CERCLA. *See, e.g., United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1151 (9th Cir. 2010); *United States v. BP Amoco Oil,* 277 F.3d 1012, 1021 (8th Cir. 2002); *Comerica Bank-Detroit v. Allen Industries, Inc.*, 769 F. Supp. 1408 (E.D. Mich. 1991) ("The terms of § 113(f)(2) make it clear that the cross claims [for contribution] do not survive the settlement between the State and [the defendant].").

7

The government and Union Pacific settled the case in May of 2011, and Judge Smith Camp approved the settlement on August 9, 2011, following a thirty-day public comment period. Asarco did not submit any comments to the EPA during this time period and did not attempt to intervene in the Nebraska CERCLA case. Asarco did not object to the Consent Decree.

The court finds that under CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), judicial approval of the settlement gives Union Pacific protection from contribution claims, meaning that no one can sue Union Pacific for "costs incurred" in relation to the OLS. The court agrees that were it to grant relief to Asarco, the result would be an unraveling of the Consent Decree. The Arizona District Court noted as much stating "the relief requested by Asarco is 'inextricably intermingled' with the provisions of the Consent Decree" and that "the relief Asarco seeks is directly contrary to the terms of the Consent Decree." (Filing No. 27 at 6.)[2]

The court further finds that the government does have a right to settle with one PRP, and such settlement bars other PRPs from seeking contribution from that party. 42 U.S.C. § 9613(f)(2). The statute states that "[i]n any action . . . the rights of any person [who settles] . . . shall be subordinate to the rights of the United States or the State. 42 U.S.C. § 9613(f)(3)(C). *See* *BP Amoco Oil PLC*, 277 F.3d at 1017; *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1186 n. 17 (3rd Cir. 1994). *See also* *United States v. Union Elec. Co.*, 64 F.3d 1152, 1166 (8th Cir.1995). Additionally, the First Circuit has held that contribution protection "was designed to encourage

---

[2] The court determines that it does not matter whether the language stated by the Arizona case is a decision on the merits or not, because the court agrees in any event with the statements made by the Arizona court.

settlements and provide PRPs a measure of finality in return for their willingness to settle." *Cannons Engineering Corp*, 899 F.2d at 92. Likewise, the Eighth Circuit has stated that contribution protection "prevents duplicate liability and encourages cooperation with the government, thereby serving the goals of efficient and effective environmental cleanup and regulation." *BP Amoco Oil*, 277 F.3d at 1021.

    The court agrees with Union Pacific that Counts III and IV must be dismissed (declaratory judgment and contribution claims). A person who has resolved its liability to the United States . . . in [a] . . . judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2); *see also* 42 U.S.C. § 9622(h)(4). Contribution protection was designed to encourage settlements and provide PRPs a measure of finality in return for their willingness to settle. *Id.* (citing H.R. Rep. No. 99–253, Part I, 90th Cong., 1st Sess. 80 (1985), reprinted in 1986 U.S. Code Cong. & Admin. News 2835, 2862). Additionally, contribution protection "prevents duplicate liability and encourages cooperation with the government, thereby serving the goals of efficient and effective environmental cleanup and regulation." *BP Amoco Oil, PLC*, 277 F.3d at 1021; *see also United States v. Cannons Engineering*, 899 F.2d 79, 92 (1st Cir. 1990) ("Congress specifically provided that contribution actions could not be maintained against settlors." (citing 42 U.S.C. § 9613(f)(2)). This protection under § 1132(f)(2) applies to matters addressed by the consent decree. In the case before the court, the consent decree includes "all response actions taken or to be taken and all response costs incurred or to be incurred and natural resource damages, at or in connection with the Site, by the United States or any other person." Filing No. 53, Ex. 2 ¶ 81.

9

Based on the foregoing, the court finds the consent decree protects Union Pacific from any claims of contribution, absent a specific waiver, as discussed hereinafter.

### B. Tolling Agreement

The court agrees that the construction of this agreement is a legal, not factual, question. *Ruble v. Reich*, 611 N.W.2d 844, 849-50 (Neb. 2000).

Asarco argues that contribution protection under CERCLA can be contractually waived. *See*, e.g., *Sherman v. PremierGarage Sys., LLC*, No. CV 10-0269-PHX-MHM, 2010 WL 3023320, *5 (D. Ariz. July 30, 2010) (*citing Swanson v. Image Bank, Inc.*, 206 Ariz. 264 (2003)); *Mardan Corp. v. C.G.C. Music, LTD*, 804 F.2d 1454, 1458-60 (9th Cir. 1986); *Interstate Power Co. v. Kansas City Power & Light Co.*, 909 F. Supp. 1224, 1233 (N.D. Iowa 1991).

Asarco and Union Pacific entered into a Tolling Agreement. Filing No. 1, Complaint, Ex. A, at 5. Asarco and Union Pacific agreed to toll any applicable statute of limitations on Asarco's contribution claims until two years after the conclusion of Union Pacific's FOIA litigation against the EPA. *Id.* at 3, ¶ 4. The parties also "reserve[d] all rights and defenses which they may have, except as set forth in this Agreement, to contest or defend any claim or action the other Party may assert or initiate against them." *Id.* at 4, ¶ 10. Additionally, the parties agreed to an integration clause which states that the contract "contains the entire agreement between the Parties, and no statement, promises, or inducements made by any Party, or agent or representative of any Party that is not contained in this Agreement shall be valid or binding." *Id.* at 4, ¶ 15. The parties expressly agreed that the Tolling Agreement could "not be enlarged or altered except by writing signed by all the Parties." *Id.* Asarco points out the Tolling

10

Agreement allowed for the contribution claim to be submitted to alternative dispute resolution and that Asarco's intervention in the FOIA case "shall not . . . constitute a waiver of any . . . position related to the Contribution Claim[] . . . to be resolved subsequently in ADR between the Parties." Agreement ¶¶ 3, 13.

Asarco contends that the purpose of the Tolling Agreement was to allow it to enforce its own contribution rights in the event the government and Union Pacific entered into a consent decree. Union Pacific argues that Asarco knew that if Union Pacific settled with the government, Asarco would lose its claims against Union Pacific. Union Pacific also asserts that there is no language such as "waiver of contribution," "contribution protection," and "CERCLA Section 113(f)" anywhere in the Tolling Agreement. This omission, argues Union Pacific, is compelling.

With respect to the waiver, Union Pacific argues the Tolling Agreement cannot counteract the contribution protection under the statute § 113(f)(2). Union Pacific contends that any such waiver must be clear and unambiguous in any event, which it is not. See *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 612-15 (7th Cir. 1998) (Posner, J.). The Second and Eighth Circuits have likewise held that under CERCLA indemnity agreements with allocations of liability must "evince a clear and unmistakable intent of the parties. . . ." *Keywell Corp. v. Weinstein*, 33 F.3d 159, 165 (2d Cir. 1994); see also *Lion Oil Co., Inc. v. Tosco Corp.*, 90 F.3d 268, 270 (8th Cir. 1996) (finding purchaser's agreement to indemnify seller of oil refinery for all CERCLA liability was valid based on the clear, unequivocal and unambiguous allocation of liability in the sales contract). See also *Metro. Edison Co. v. N.L.R.B.*, 460 U.S. 693, 708 (1983) ("We will not infer from a general contractual provision that the parties intended to waive a

statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable.") . *Communication Workers of Am. AFL-CIO, Local 1051 v. N.L.R.B.*, 644 F.2d 923, 928 (1st Cir. 1981) ("Where a statutory right is involved . . . 'a waiver should be express, and . . . a mere inference, no matter how strong, should be insufficient."). The same law applies in Nebraska. *Davenport Ltd. P'ship v. 75th & Dodge I, L.P.,* 780 N.W.2d 416, 425 (Neb. 2010) (holding that waiver requires "clear, unequivocal, and decisive action of a party showing such purpose").

Asarco argues that clear and unmistakable standard applies to groups, such as unions, representing constitutional or statutory rights, but not to statutory rights as we have in this case. See *Wright v. Univ. Mar. Serv. Corp.*, 525 U.S. 70, 80-81 (1998); *see also Children's Hosp. Med. Ctr. v. Cal. Nurses Ass'n*, 283 F.3d 1188, 1192 (9th Cir. 2002) ("In *Wright*, the Supreme Court stated that the clear and unmistakable standard does not apply to an "an individual's waiver of his own rights."); *Walker v. Carnival Cruise Lines*, 63 F. Supp. 2d 1083, 1090 (N.D. Cal. 1999) (citing *Wright* for the conclusion that the "clear and unmistakable" standard does not apply in instances where a party has waived a statutory right in an "individual . . . contract"). Asarco contends this court need only find that Union Pacific waived its right to protected contribution when it signed the Tolling Agreement.

The court finds the tolling agreement does not permit an end run around the Settlement Agreement. The court agrees with Union Pacific that the language in the Tolling Agreement does not support a waiver of Union Pacific's contribution defense under the statute. The court further finds it does not matter if it applies a clear and unequivocal standard or not. At the very least the waiver must be explicitly expressed.

There is no such language in this case. There is no clear agreement between the parties to preserve anything other than an extended two-year statute of limitations. There is no language that expressly waives the CERCLA contribution defense. There is no waiver or guarantee of anything else. The Tolling Agreement waiver states: "[T]he Parties agree that the statute of limitations is a waivable defense, as between the Parties." Compl. Ex. A at 3, ¶ 7. The Tolling Agreement further states that the parties "reserve all rights and defenses which they may have, except as set forth in this Agreement, to contest or defend any claim or action the other Party may assert or initiate against them." Compl. Ex. A, ¶ 10 at 4. There is no specific part of the Tolling Agreement that mentions Asarco's CERCLA contribution claim against Union Pacific and preservation of the same.[3] There is no explicit language that permits such a conclusion. Accordingly, the court finds the Tolling Agreement does not support Asarco's claim and does not permit contribution against Union Pacific.

The claims set forth in Counts I, II and V, although couched as indemnification and breaches of contract, are likewise contribution claims. They are based on the same circumstances previously set forth herein. To allow these claims to proceed would again eradicate the contribution protection permitted upon settlement with the government. *See Cannons Engineering*, 899 F.2d at 92 ("Although CERCLA is silent regarding indemnification, we refuse to read into the statute a right to indemnification that would eviscerate § 9613(f)(2) and allow non-settlors to make an end run around the statutory scheme."); *United States v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1495-97

---

[3] Union Pacific points out that as a result of the Tolling Agreement, Asarco benefited greatly. Asarco received thousands of documents pursuant to the FOIA case from Union Pacific that allowed it to reopen five federal cases and reduce or vacate its settlement with the government, based on fraud and document destruction, resulting in a $15 million settlement with the United States and Asarco.

(S.D. Ohio 1991) (dismissing indemnity, breach of contract, and other equitable claims as "disguised" claims for contribution).  Thus, they too are dismissed.

## CONCLUSION

In summary, the court concludes that the CERCLA settlement with the government protects Union Pacific from contribution claims such as the one presented in this case.  Second, the parties in the Tolling Agreement extended the statute of limitations for two years, but they did not specifically waive the CERCLA contribution protections.  In fact, Union Pacific reserved all rights and defenses to contest or defend any claim the other might have against them.  Filing No. 1-2, ¶¶ 4, 7, 10.  Third, Asarco failed to file anything during the public comment process, even though it received notice of and instructions on how to do so and failed to intervene in the CERCLA case.  For these reasons, the court finds Union Pacific's motion to dismiss should be granted.

THEREFORE, IT IS ORDERED that Union Pacific's motion to dismiss, Filing No. 51, is granted.  A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 1st day of July, 2013.

BY THE COURT:

s/ Joseph F. Bataillon  
United States District Judge